NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL HASHER, | : | |
| | : | Civil Action No. 10-3435 (DMC) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| CHRIS CHRISTIE, et al., | : | |
| | : | |
| Defendants. | : | |

APPEARANCES:

> MICHAEL HAHSER, Plaintiff pro se
> #000348
> Special Treatment Unit
> 8 Production Way, CN 905 (Bldg. South)
> Avenel, New Jersey 07001

**CAVANAUGH**, District Judge

Plaintiff, Michael Hasher, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, and plaintiff's application for a temporary restraining order submitted on July 16, 2010, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether this action should be dismissed as frivolous

or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that this action should be dismissed without prejudice at this time, with the exception of plaintiff's retaliation claim against defendant Merrill Main, which will be allowed to proceed.

I.  BACKGROUND

Plaintiff, Michael Hasher ("Hasher"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Chris Christie, the Governor of New Jersey; Paula Dow, Attorney General of the State of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Beverly Hasting, Administrator, Adult Diagnostic and Treatment Center ("ADTC") and the Special Treatment Unit ("STU"); Steven Johnson, Assistant Superintendent - STU; John Main, Director of the Anne Klein Forensic Center; Merrill Main, Clinical Program Director for the STU; and numerous John and Jane Does.  (Complaint and Amended Complaint, Caption and ¶¶ 3.2-3.14).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

2

The Court first takes note that plaintiff is no stranger to this Court.  Mr. Hasher has been a litigant in several lawsuits filed in this District Court, challenging the conditions of his civil confinement as well as the policies, practices, implementation and administration of treatment programs, psychological/educational modules, testing and evaluations, etc., namely, in Alves, et al. v. Ferguson, et al., Civil No. 01-789 (DMC) and Hasher v. Hayman, et al., Civil No. 08-4105 (PGS). Thus, to the extent that Hasher's claims in the instant action are duplicative of the claims pending resolution in the aforementioned cases, such claims will be dismissed.

In the present case, however, Hasher alleges that, on or about May 12, 2010, he was transferred from the Kearny facility for SVPs and placed in the South Unit at the East Jersey State Prison ("EJSP"), which was designated for isolation and punishment of selected SVP residents.  In particular, Hasher alleges that defendant Merrill Main selected Hasher for placement in the South Unit because Hasher has filed grievances against the STU.  (Complaint, ¶ 5.4, Motion for Temporary Restraining Order ("TRO") at ¶ 3).

On May 14, 2010, Hasher, together with his Public Advocate attorney, filed a motion in his state court proceeding, demanding that Main compensate plaintiff for back pay.  (Compl., ¶ 5.2; TRO motion at ¶ 4).  On May 21, 2010, Hasher received a treatment

3

program schedule with only one process group a week compared to seven, which plaintiff allegedly attended before he filed his motion for back pay. (Compl., ¶ 5.5, TRO motion, ¶ 7). Hasher admits that he filed a motion in his state court case asserting claims against defendant Main for deliberate indifference and retaliation with respect to his reduced treatment plan. (Compl., ¶ 5.9; TRO motion, ¶ 8).

Hasher makes general allegations that he is being denied access to a law library, and that his conditions of confinement violate his Fourteenth Amendment liberty interests. Namely, he generally alleges that there is no air conditioning, no hot water, a small window in his room, no clean, running water to drink, and one closed-in therapy room for 81 sex offenders. (Compl., ¶ 4.7).

He also generally objects to his confinement in a prison facility as punitive confinement, and he contends that he has been denied effective treatment. Hasher seeks declaratory and injunctive relief. He also asks for $1000.00 per day for every day he is denied treatment. (Compl., ¶¶ 7.1 - 7.5).

II. STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis. Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious,

4

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Hasher is proceeding in forma pauperis in this matter, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

    In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

    A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required."  Fed.R.Civ.P. 8(d).

cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting

Twombly, 550 U.S. at 555), the Supreme Court identified two

working principles underlying the failure to state a claim

standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... . Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief." Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

context-specific task that requires the reviewing court to
draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

### III.  SECTION 1983 ACTIONS

Hasher brings this action pursuant to 42 U.S.C. § 1983,

claiming that the actions of the defendants have violated his

constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

9

under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 et seq., provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

10

> ... a person who has been convicted, adjudicated delinquent
> or found not guilty by reason of insanity for commission of
> a sexually violent offense, or has been charged with a
> sexually violent offense but found to be incompetent to
> stand trial, and suffers from a mental abnormality or
> personality disorder that makes the person likely to engage
> in acts of sexual violence if not confined in a secure
> facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings. N.J.S.A. 30:4-27.35. A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge. N.J.S.A. 30:4-27.36.

V.   ANALYSIS

A.   Transfer to Prison Facility Claim

It appears that Hasher may be asserting a claim that his transfer to a prison facility, as a civilly committed person under the SVPA, is unconstitutional. In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act. The Act called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community. Id., 521 U.S. at 363-64. Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a segregated unit within the prison system. However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals. Moreover,

11

confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment. Id., 521 U.S. at 363, 364, 365-368. Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed. Id., 521 U.S. at 368-69. See also Seling v. Young, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling, respectively.[3] See Bagarozy v. Goodwin, Civil Action No. 08-468 (SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002). Therefore, this Court finds that Hasher's transfer, with the SVP residents of the Kearny facility, to a segregated unit in the East Jersey State Prison does not, in and of itself, violate the U.S. Constitution's Due Process Clause.

---

[3] Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released. United States v. Comstock, No. 08-1224, __ U.S. __, 130 S.Ct. 1949 (May 17, 2010). Although these civilly committed persons remained confined at a federal prison, namely, FCI Butner, the Court did not address their place of civil confinement as being unconstitutional.

Accordingly, any claim that plaintiff's transfer to a
segregated unit within a prison facility is unconstitutional will
be dismissed for failure to state a cognizable claim of a
constitutional deprivation.

B.   Conditions of Confinement Claim

Although plaintiff's transfer to a segregated unit within a
prison facility is not, in and of itself, a constitutional
violation, Hasher makes additional allegations concerning the
conditions of confinement at the EJSP facility.   For instance, he
complains that he is confined in the south unit, allegedly
designated for "troublemakers," and that he is restricted from
groups, modules and open recreation in other units at EJSP.   See
Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982)("Persons who have
been involuntarily committed are entitled to more considerate
treatment and conditions of confinement than criminals whose
conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly
committed persons not be subjected to conditions that amount to
punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[4] within
the bounds of professional discretion, Youngberg, 457 U.S. at
321-22.   Specifically, in Youngberg, the Supreme Court held that
civilly committed persons do have constitutionally protected

_____

    [4]   In Bell v. Wolfish, the Supreme Court held that whether a
condition of confinement of pretrial detainees violated their
constitutional rights turns on whether the disability is imposed
for the purpose of punishment or whether it is but an incident of
some other legitimate government purpose.   441 U.S. 520, 535-39,
(1979).

13

interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307.   The Constitution is not concerned with de minimis restrictions on patients' liberties.   Id. at 320.   Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed."   Seling, 531 U.S. at 265.   While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Hasher's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in the south unit, which is segregated from the general population at EJSP.

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[5] to

_____

[5]   In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.   See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present

14

segregated confinement of civilly committed SVPs).  See also
Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise
extending Sandin to civil commitment settings).  As stated above,
Hasher's complaints about the restrictions on his confinement are
minimal.  He is not prevented from attending group or recreation,
but is only limited to segregated activities in the South Unit.

   Therefore, with respect to his conditions claims as alleged,
this Court finds that Hasher has failed to state a cognizable
claim in this regard at this time, and the alleged conditions of
confinement claims will be dismissed without prejudice.  To the
extent that Hasher can allege facts to show that unconstitutional
conditions of confinement exist, he may seek leave to re-open
this case and file an amended pleading.[6]

   Hasher also generally alleges that when he arrived at EJSP,
his unit has no air conditioning, no hot water, no clean running
water, and one small window in his cell/room.  While Hasher
baldly asserts that these conditions are intended as punishment,

_____

the type of atypical, significant deprivation in which a State
might conceivably create a liberty interest.").

   [6]  Should plaintiff so choose to amend his Complaint to cure
the deficiencies noted herein, pursuant to Federal Rule of Civil
Procedure 15, Hasher should note that when an amended complaint
is filed, the original complaint no longer performs any function
in the case and "cannot be utilized to cure defects in the
amended [complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.

he does not allege that he has suffered adverse consequences from the conditions, and admits that prison officials have stated that they are working on fixing the water problems. Thus, based on these very general allegations, even if true, the Court finds no atypical or significant deprivation that would rise to the level of a constitutional violation at this time.

Therefore, with respect to his conditions claims as alleged, this Court finds that Hasher has failed to state a cognizable claim in this regard at this time, and the alleged conditions of confinement claims will be dismissed without prejudice. To the extent that Hasher can allege additional facts to show that unconstitutional conditions of confinement continue to exist and he has suffered adverse consequences from such conditions, he may seek leave to re-open this case and file an amended pleading.

C.  Access to Law Library Claim

This Court next considers Hasher's allegations that he has been denied access to the courts (via denial of access to the law library) in violation of his First and Fourteenth Amendment rights. Courts have recognized different constitutional sources for the right of access to the courts. Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[7]

_____

    [7]  The right of access to the courts is an aspect of the First Amendment right to petition. McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). The Supreme Court also found that "[t]he

The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(quoting Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are

---

constitutional guarantee of due process of law has as a corollary
the requirement that prisoners be afforded access to the courts
in order to challenge unlawful convictions and to seek redress
for violations of their constitutional rights."  Procunier v.
Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,
Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also,
Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the
constitutional right to petition the Government for redress of
their grievances, which includes a reasonable right of access to
the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v.
McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the
courts might also arise under the Sixth Amendment's right to
counsel; however, under the circumstances of the present case,
the Sixth Amendment clearly is not implicated.

those that the inmates need in order to attack their sentences,
directly or collaterally, and in order to challenge the
conditions of their confinement.  Impairment of any <u>other</u>
litigating capacity is simply one of the incidental (and
perfectly constitutional) consequences of conviction and
incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996)
(emphasis in original).  Similarly, a pretrial detainee has a
right of access to the courts with respect to legal assistance
and participation in one's own defense against pending criminal
charges.  <u>See</u>, <u>e.g.</u>, <u>May v. Sheahan</u>, 226 F.3d 876, 883-84 (7th
Cir. 2000); <u>Caldwell v. Hall</u>, 2000 WL 343229 (E.D. Pa. March 31,
2000).  <u>But see</u> <u>United States v. Byrd</u>, 208 F.3d 592, 593 (7th
Cir. 2000) (pretrial detainee who rejects an offer of court-
appointed counsel in satisfaction of the Sixth Amendment right to
counsel has no alternative right to access to a law library);
<u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290-91 (11th Cir. 1998)
(same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385,
**4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or
imminent "actual injury" by hindering his efforts to pursue such
a claim or defense.  <u>See Lewis</u>, 518 U.S. at 348-51, 354-55
(1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).
"He might show, for example, that a complaint he prepared was
dismissed for failure to satisfy some technical requirement

which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Hasher fails to allege any actual injury as a result of the alleged denial of access to the law library.  He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action, or his state court action complaining about his reduced treatment plan.  Consequently, the allegations in the Complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation .... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (citations and internal quotation marks omitted).

Furthermore, Hasher does not articulate how the alleged denial of access to the law library has hindered his efforts to either pursue this claim or defend himself in any pending state proceedings.  Therefore, his claim alleging denial of access to

19

the courts based on an alleged failure to provide access to the
law library will be dismissed without prejudice for failure to
state a claim at this time.

D.   Interruption of Treatment Claim

   Finally, Hasher asserts that he is denied group
therapy/treatment sessions because of his transfer to the EJSP
South Unit.  He contends that he is denied the right to adequate
treatment and reasonable care applicable to civilly committed
SVPs, in violation of the Fourteenth Amendment.

   The Fourteenth Amendment to the United States Constitution,
§ 1, guarantees that "[n]o State shall ... deprive any person of
life, liberty, or property, without due process of law."  This
due process guarantee has been interpreted to have both
procedural and substantive components, the latter which protects
fundamental rights that are so "implicit in the concept of
ordered liberty" that "neither liberty nor justice would exist if
they were sacrificed."  Palko v. Conn., 302 U.S. 319, 325 (1937).
These fundamental rights include those guaranteed by the Bill of
Rights, as well as certain liberty and privacy interests
implicitly protected by the Due Process Clause, such as the right
to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997).
Substantive due process also protects against government conduct
that is so egregious that it "shocks the conscience," even where
the conduct does not implicate any specific fundamental right.
See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). However, regulations not implicating fundamental rights (in other words, those claims attacking particularly egregious or arbitrary governmental actions) are analyzed under the deferential standard referred to as the rational basis review, and will generally succeed only if the government action shocks the conscience. See Glucksberg, 521 U.S. at 728.

With respect to Hasher's claim, it appears that he is asserting that he has a fundamental right to adequate treatment as a civilly committed sex offender. The Supreme Court established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation", self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints. Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated. Youngberg, 457

21

U.S. at 320.  Although restrictions burdening a fundamental right

generally receive strict scrutiny, in Youngberg, the Supreme

Court found that this sort of rigorous analysis would unduly

burden the ability of states, specifically their professional

employees, to administer mental health institutions.  Id. at 322.

Consequently, the Court concluded that "the Constitution only

requires that the courts make certain that professional judgment

was in fact exercised," because "[i]t is not appropriate for the

courts to specify which of several professionally acceptable

choices should have been made."  Id. at 321 (internal quotation

and citation omitted).  Thus, a decision, "if made by a

professional, is presumptively valid; liability may be imposed

only when the decision by the professional is such a substantial

departure from accepted professional judgment, practice, or

standards as to demonstrate that the person responsible actually

did not base the decision on such judgment."  Id. at 323.

    In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United

States Court of Appeals for the Third Circuit held that New

Jersey's unique former statutory scheme for sex offenders that

predicated the term of sentence on a prisoner's response to

treatment and created a right to treatment created a fundamental

and cognizable liberty interest in treatment, for purposes of

both procedural and substantive due process analyses.  288 F.3d

at 545.  Leamer was not a civilly committed sex offender like

plaintiff here.  Rather, Leamer was a convicted sex offender

whose confinement and treatment were inextricably linked pursuant
to statute.   The sentencing court had classified Leamer as having
a "mental aberration" and in need of "specialized treatment,"
which automatically subjected Leamer to the maximum incarceration
permitted by law unless he is cured prior to that point.   Leamer
could not reduce his sentence through good behavior credits,
parole policies or other credits.   Instead, he could only shorten
his incarceration through successful therapy, which was an
"inherent and integral element" of the statutory scheme.
Consequently, the Third Circuit found that deprivation of
treatment would be a grievous loss not emanating from the
sentence.   Leamer, 288 F.3d at 544.

Apart from that recognized in Youngberg to prevent the
violation of recognized fundamental rights to safety and freedom
from physical restraints, this Court finds the Third Circuit's
holding in Leamer to clearly extend to an involuntarily committed
sex offender under New Jersey's SVPA.   Like Leamer, the length of
Hasher's confinement under the SVPA is predicated on his response
to treatment.   Indeed, the provisions of the SVPA explicitly
recognize New Jersey's obligation to provide treatment to SVPs
for their eventual release based on successful therapy.   See
N.J.S.A. 30:4-27.32(a)("If the court finds by clear and
convincing evidence that the person needs continued involuntary
commitment as a sexually violent predator, it shall issue an
order authorizing the involuntary commitment of the person to a

23

facility designated for the custody, care and **treatment** of

sexually violent predators")(emphasis added); <u>N.J.S.A.</u> 30:4-

34(b)("The Division of Mental Health Services in the Department

of Human Services shall provide or arrange for treatment for a

person committed pursuant to this act.  Such treatment shall be

appropriately tailored to address the specific needs of sexually

violent predators."); <u>N.J.S.A.</u> 30:4-27.36(a)(At any time during

the involuntary commitment of a person under this act, if the

person's treatment team determines that the person's mental

condition has so changed that the person is not likely to engage

in acts of sexual violence if released, the treatment team shall

recommend that the Department of Human Services authorize the

person to petition the court for discharge from involuntary

commitment status"); <u>see</u> <u>also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346,

367 (1997)(concluding from similarly-worded provisions of Kansas

SVP Act that "the State has a statutory obligation to provide

'care and treatment for [persons adjudged sexually dangerous]

designed to effect recovery ....")(alterations in

original)(internal citations omitted).

Therefore, based on <u>Youngberg</u> and <u>Leamer</u>, this Court

concludes that Hasher's liberty interest in treatment is

fundamental and cognizable for purposes of both procedural and

substantive due process analyses.  <u>But</u> <u>see</u> <u>Bailey v. Gardebring</u>,

940 F.2d 1150, 1154 (8th Cir. 1991), <u>cert</u>. <u>denied</u>, 503 U.S. 952

(1992)(where the Eighth Circuit noted that <u>Youngberg</u> did not

establish a right for the civilly committed to treatment per se;
the Supreme Court only "held that the Constitution required only
such 'minimally adequate training ... as may be reasonable in
light of [the] liberty interest[ ] in safety and freedom from
unreasonable restraints.'") (quoting Youngberg, 457 U.S. at 322).
In Bailey, the Eighth Circuit concluded that plaintiff had no
right to "psychiatric treatment to overcome a 'sexual offender
condition'" because he "was neither in danger during his civil
commitment nor was he subject to any restraints beyond the
ordinary incidents of any involuntary confinement." Id. at 1153,
1154. Citing Bailey, district courts in the Eighth Circuit have
since concluded that civilly committed sexual predators have no
substantive due process right to mental health treatment,
adequate or otherwise. See Semler v. Ludeman, 2010 WL 145275, at
*26 (D. Minn. Jan. 8, 2010)("Because this Court has not
recognized a constitutional right to effective 'treatment' in the
context of civilly committed sex offenders, Plaintiffs [alleging
substantive due process violations through ineffective treatment]
have failed to allege a due process claim ....")(citing
Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11,
2008)(finding, in ultimately concluding that involuntarily
committed sex offender's right to treatment is not "clearly
established" for purposes of 28 U.S.C. § 2254(d)(1), that
Youngberg "only recognized a right to 'minimally adequate'

25

treatment that reduces the need for restraints," and not "comparable right to treatment that facilitates release")).

Nevertheless, while this Court may recognize that Hasher has a fundamental and cognizable liberty interest in treatment, based on the allegations and admissions by plaintiff in his Complaint, this Court also determines that there has been no procedural or substantive due process violations at this time.

With respect to Hasher's right to procedural due process, there does not appear to be any basis to plaintiff's claim that there has been a categorical denial of therapy due to his transfer to EJSP's administrative segregation unit.   In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest.  Leamer, 288 F.3d at 546.  In the instant case, Hasher is not actually confined in administrative segregation for the purpose of punishment, but rather, he and the other SVP residents from the Kearny facility were transferred to a unit at EJSP separate and apart from the convicted prisoners. Moreover, there is no absolute denial of treatment.  Indeed, plaintiff admits that he has attended group sessions, but his group therapy is limited to the South Unit where he is confined.

26

This Court likewise finds no substantive due process violation at this time.  Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty."  Glucksberg, 521 U.S. at 721.  Under this standard, Defendants' actions in denying Hasher his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience.  See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, defendants have not categorically declined to provide any mental health treatment to the SVP residents at EJSP.  Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Hasher's substantive due process rights.  Thus, the Court concludes that treatment has not been denied to the SVP residents as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Therefore, this Court concludes that any alleged short-lived disruption of therapy and treatment has not been shown to

27

be so egregious as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, Hasher's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right at this time

Finally, the Court acknowledges that Hasher has specifically alleged that defendant Merrill Main has retaliated against Hasher by limiting Hasher to one treatment plan, rather than seven, because Hasher filed a motion in his state court action seeking back pay.  It appears that Hasher is invoking a claim of retaliation against defendant Main.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.

28

Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Based on the allegations as set forth above, this Court finds that Hasher may be able to show a claim of retaliation against defendant Merrill Main only, because he alleges that Main expressly limited his group treatment plan to one in retaliation for plaintiff filing a complaint in state court, a legitimate exercise of plaintiff's First Amendment rights.  Therefore, plaintiff's claims of retaliation will be allowed to proceed at this time.[8]

E.   Motion for Preliminary Injunction

Hasher also seeks preliminary injunctive relief.  To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest."  Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537

---

[8]   While Hasher admits that he brought a similar claim in a state court action, he does not allege that his state case is proceeding under federal constitutional claims.  In addition, Hasher alleges that his new claim of retaliation may not be allowed to proceed in his state court action.  Therefore, rather than preclude a possibly viable claim at this stage, the Court will allow the claim to proceed.

(D.N.J. 1999) (as to temporary restraining order).  A plaintiff
must establish that all four factors favor preliminary relief.
Opticians Ass'n of America v. Independent Opticians of America,
920 F.2d 187 (3d Cir. 1990).  The standards for a permanent
injunction are essentially the same as for a preliminary
injunction, except that the plaintiff must show actual success on
the merits, not a likelihood of success, to obtain a permanent
injunction.  See University of Texas v. Camenisch, 451 U.S. 390,
392 (1981).

Here, most of plaintiff's claims asserted in this Complaint,
with the exception of his retaliation claim against defendant
Merrill Main, are being dismissed for failure to state a claim at
this time.  Accordingly, Hasher has not alleged facts sufficient
to satisfy the first requirement that he may be likely to succeed
on the merits.  Moreover, Hasher fails to articulate irreparable
harm, and thus, cannot satisfy the second mandatory requirement.

Therefore, because Hasher is unable to establish all four
factors necessary for preliminary injunctive relief as required,
his application for preliminary injunctive relief will be denied.

V.   CONCLUSION

For the reasons set forth above, plaintiff's claim asserting
a First Amendment retaliation violation as against defendant
Merrill Main will be allowed to proceed at this time.  However,
all remaining claims will be dismissed without prejudice, in
their entirety as against all named defendants, for failure to

30

state a claim at this time, pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii).  Plaintiff may seek leave to file an amended
pleading to cure the deficiencies noted herein with respect to
the dismissed claims.  An appropriate order follows.


DENNIS M. CAVANAUGH
United States District Judge